# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

FAYE R. HOBSON,

        Appellant,

        v.

DEPARTMENT OF DEFENSE,

        Agency.

DOCKET NUMBER
CH-3330-20-0418-X-1

DATE: June 2, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Faye R. Hobson</u>, Clarksville, Tennessee, pro se.

<u>Emeka Nwofili</u>, Esquire, and <u>Melissa Martinez</u>, Peachtree City, Georgia,
    for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

**FINAL ORDER**

¶1	In a May 26, 2021 compliance initial decision, the administrative judge found the agency in noncompliance with the Board's February 17, 2020 final decision in the underlying Veterans Employment Opportunities Act of 1998 (VEOA) appeal on the basis that the agency had not removed the incumbent, M.O., of the Social Studies Teacher position during its reconstructed hiring process and had "not shown that it undertook other efforts that would qualify as a bona fide reconstruction process."  *Hobson v. Department of Defense*, MSPB Docket No. CH-3330-20-0418-C-1, Compliance File (CF), Tab 6, Compliance Initial Decision (CID); *Hobson v. Department of Defense*, MSPB Docket No. CH-3330-20-0418-I-1, Initial Appeal File (IAF), Tab 66, Initial Decision (ID).[3] Accordingly, the administrative judge ordered the agency "to again reconstruct the hiring for the position of 0220 Middle School Social Studies at [Fort] Campbell, Referral No. 081475 in accordance with the Board's final order and consistent with the case-law."  CID at 10.

¶2	The agency thereafter filed a timely motion to extend the deadline to submit a petition for review or statement of compliance.[4] *Hobson v. Department*

---

[3] The administrative judge's February 17, 2020 initial decision in the underlying appeal became the final decision of the Board by operation of law on March 24, 2021, because neither party filed a petition for review.  ID at 10.

[4] As noted in the compliance initial decision, the Board's regulations provide that, upon a finding of noncompliance, the party found to be in noncompliance must do the following:

> (i) To the extent that the party decides to take the actions required by the initial decision, the party must submit to the Clerk of the Board, within the time limit for filing a petition for review under § 1201.114(e) of this part, a statement that the party has taken the actions identified in the initial decision, along with evidence establishing that the party has taken those actions.  The narrative statement must explain in detail why the evidence of compliance satisfies the requirements set forth in the initial decision.

*of Defense*, MSPB Docket No. CH-3330-20-0418-X-1, Compliance Referral File (CRF), Tab 3. The Board granted the motion over the appellant's objection and extended the agency's deadline to July 30, 2021. CRF, Tab 5 at 1. The agency, however, did not file a petition for review or a statement of compliance by the July 30, 2021 deadline. CRF, Tab 9 at 1. Consequently, the appellant's petition for enforcement has now been referred to the Board for a final decision on issues of compliance pursuant to 5 C.F.R. § 1201.183(c)(1). *See* CRF, Tab 9 at 2.

¶3 On August 4, 2021, the Office of the Clerk of the Board issued an acknowledgement order in the instant proceeding ordering the agency to submit evidence of compliance within 15 calendar days. *Id.* at 3. On August 19, 2021, the agency submitted its statement, in which it represented that it was in full compliance with the compliance initial decision. CRF, Tab 10. The appellant has submitted several filings responding to the agency's statement of compliance. CRF, Tabs 11, 12, and 13. For the reasons discussed below, we now find the agency in compliance and dismiss the petition for enforcement.

## BACKGROUND

¶4 This proceeding arises out of the appellant's nonselection for a position as a teacher, 0220 Middle School Social Studies at Fort Campbell, Referral No. 081475 ("the Social Studies Teacher position" or "subject position"), with the Department of Defense Education Activity in the Americas Region (DoDEA). On an unspecified date, the appellant applied to DoDEA using the agency's

---

> (ii) To the extent that the party decides not to take all of the actions required by the initial decision, the party must file a petition for review under the provisions of §§ 1201.114 and 1201.115 of this part.

5 C.F.R. § 1201.183(a)(6). The Board's regulations further provide that if "a party found to be in noncompliance under paragraph (a)(5) of this section does not file a timely pleading with the Clerk of the Board as required by paragraph (a)(6) of this section, the findings of noncompliance become final and the case will be processed under the enforcement provisions of paragraph (c)(1) of this section." 5 C.F.R. § 1201.183(b).

online Employment Application System (EAS) and indicated her interest in a variety of teaching positions within the agency. IAF, Tab 1 at 30-38. "[E]AS is a web-based application system that the agency uses to fill educator-position vacancies; applicants enter personal and professional information into EAS and identify 'teaching categories and location preferences for which they would like to be considered.'" ID at 2.

¶5 According to the agency's submission, the agency does not announce vacant positions in DoDEA pursuant to 10 U.S.C. § 2164. CRF, Tab 10 at 2. Instead, to fill a vacancy for a teacher position, an agency school administrator submits a Request for Personnel Action (RPA) to the agency's recruitment division. *Id.* at 29. Once the recruitment division receives the RPA, a human resources (HR) staffing specialist queries EAS for qualified candidates. *Id.* at 29-30. At that time, EAS performs an automated review of the applicants' data and assigns a score to each applicant that cannot be "manipulated" by the HR staffing specialist or the applicant. *Id.* at 30.

¶6 An external applicant claiming veterans' preference or derived veterans' preference may submit documentation supporting the claim through EAS. ID at 2. EAS, however, does not determine eligibility for veterans' preference. CRF, Tab 10 at 30. Rather, an HR specialist will evaluate the supporting documentation, determine whether the applicant is eligible for veterans' preference, and, if so, add the appropriate amount of veterans' preference points to the applicant's EAS-assigned score. *Id.*

¶7 After running the EAS query, an HR specialist will then generate a candidate referral list consisting of all internal candidates—who are not ranked or scored by EAS—and the 25 highest-scoring external candidates, listed in the

order of their score from highest to lowest.[5] *Id.* The referral list will then be provided to a selecting official for consideration. *Id.*

¶8    On or about October 11, 2019, the agency completed the referral process for the subject position. ID at 2; CRF, Tab 10 at 30. The referral list contained 52 candidates, consisting of 26 internal candidates and 26 external candidates. *See* CRF, Tab 10 at 19-21, 30-31. The EAS algorithm assigned the appellant a score of 45 based on her answers to the questions in the online application. *Id.* at 31-32. In connection with her application, the appellant identified her husband by name and submitted paperwork that the administrative judge later found established her entitlement under the VEOA to a 10-point preference as the spouse of a service-connected disabled veteran who has been unable to qualify for any appointment in the civil service or in the government of the District of Columbia. ID at 2-5. The agency, however, found her documentation insufficient and thus denied her the 10-point preference to which she was entitled. ID at 4. Based on this decision, the appellant was erroneously ranked number 14 on the external candidates list with a score of 45, when in fact, she should have been ranked number 9 with a score of 55. CID at 2; CRF, Tab 10 at 31-32.

¶9    The selecting official decided to interview two candidates for the Social Studies Teacher position: the top-ranked external candidate who had been assigned a score of 71; and an internal candidate, M.O., whom, per procedure, EAS did not score. CRF, Tab 10 at 19-21, 27. The selecting official originally selected the top-ranked external candidate, but he declined the offer. *Id.* at 31. The selecting official then selected M.O. who accepted the offer and was appointed to the position on February 16, 2021. *Id.* The agency notified the appellant that she had not been selected for the position in February 2021. ID

---

[5] The agency will refer more than 25 external candidates if the 25th-ranked candidate's score ties that of another candidate, as occurred here. *See* CRF, Tab 10 at 17.

at 4. The appellant sought relief from the Department of Labor, and when that effort was unsuccessful, she appealed to the Board. *Id.*

¶10 In the underlying appeal, the administrative judge framed the principal issue as "whether the appellant was entitled to . . . [derived veterans'] preference," which the administrative judge determined "should be answered in the affirmative." ID at 5. Since the appellant had shown that the agency had not accorded the appellant her preference rights under the competitive examination process and given her the correct ranking, the administrative judge found that the agency had violated the VEOA and granted her request for corrective action.[6] ID at 9. Accordingly, the administrative judge ordered the agency to reconstruct the hiring for the Social Studies Teacher position within 30 days of March 24, 2021. ID at 9-10.

¶11 On March 19, 2021, the agency notified the appellant by letter that the agency had "reconstructed the certificate of qualified candidates" for the Social Studies Teacher position and given her the additional 10 points to which she was entitled. CID at 2-3. The agency concluded that the recalculated score "did not [a]ffect the validity of the selection made by the hiring official" in the original hiring process because the primary selectee (the original top-ranked external candidate) remained the top-ranked external applicant, while the alternate selectee (M.O.) was an internal candidate (and thus, the agency could select her without regard to veterans' preference) who, the agency asserted, "ranked higher on both the original and the reconstructed list." CID at 3.

---

[6] It is unclear whether this approach to the issue was entirely correct because, as discussed *infra* at paragraphs 19 through 23, veterans' preference points do not apply when an agency selects an internal candidate for a position through merit promotion procedures, which is effectively what occurred in this case when the agency ultimately selected the internal candidate, M.O., for the subject position. However, since neither party has challenged the initial decision, the decision is the law of the case and we address the compliance issues under the framework set forth in the initial decision and the CID.

¶12      The appellant thereafter filed a petition for enforcement, which the administrative judge granted.  The administrative judge found that the agency's reconstructed hiring process was deficient in four aspects.  First, the agency had not removed the incumbent, M.O., from her role while it conducted the reconstructed process, as required under Board precedent.  CID at 7.  Second, the agency did not show that it actually presented the reconstructed certificate of eligible candidates to a selecting official or did anything more than seek to justify its past actions "instead of affording the appellant the reconstructed hiring that she was entitled to."  CID at 8.  Third, the agency's documentation did not show, as the agency claimed in its letter, that M.O. had a superior ranking to the appellant, and the administrative judge noted there was "no explanation why [M.O.] was selected, over the appellant or anyone else."  *Id.*  Finally, the administrative judge found that the agency had not provided the "external vacancy announcement or other evidence indicating the legal rules that would apply to a lawful selection process," and indeed, did not present evidence regarding its supposed reconstructed hiring process generally, opting instead to rely primarily on its "lawyers' words."  CID at 9-10.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶13      In its August 19, 2021 statement of compliance, the agency states that it has complied with the final decision because the evidence shows that it removed the incumbent, M.O., from the position, had the same selecting official review and rely on all candidates' files available during the original selection process, corrected the appellant's score, and gave the appellant an opportunity to compete for the vacancy at issue.  CRF, Tab 10 at 7-8.  In support of its statement of compliance, the agency provides, *inter alia*, the sworn declaration of an agency Supervisory HR Specialist, *id.* at 28-33; a memorandum signed by the selecting official, *id.* at 27; and a Notification of Personnel Action (Standard Form 50)

reflecting M.O.'s August 1, 2021 reassignment from the subject position to another teaching position, *id.* at 24.

¶14    The Supervisory HR Specialist's declaration explains EAS, the agency's procedures for filling teacher vacancies, and the method by which the agency assembled the certificate of best qualified candidates for the selecting official in this case.   The declaration further states that on August 1, 2021, the agency reassigned M.O. from the position at issue and manually reconstructed the certificate of eligible candidates to ensure that the applicants' scores appeared as they were in October 2019.  *Id.* at 32.   The Supervisory HR Specialist then provided the reconstructed certificate to the selecting official, who is the same selecting official as in the original hiring process, and instructed her to review it and document selections as if it were the only referral received.  *Id.* at 27, 33. The selecting official reviewed it and returned the referral with the selection of M.O.  *Id.* at 33.  The selecting official did not re-interview M.O. or conduct any further interviews.  *Id.* at 27.   The selecting official explained that she had selected M.O. for an interview previously because of her "experiences as reflected on her resume."  *Id.*   Based on this evidence, the agency requests that the Board find it in compliance.

¶15    The appellant disputes virtually all the agency's evidence of compliance. She broadly accuses the Supervisory HR Specialist, the selecting official, and the agency's representative of lying to the Board and "falsifying documents," CRF, Tab 11 at 10, but has offered nothing to substantiate those allegations.   More specifically, she disputes her score and the score of the top-ranked external candidate, who she suggests has been over-rated, *see id.* at 5, 8-9, and alleges that the agency "manipulates the scoring rubric for their benefit."[7]   *Id.* at 7.   She

---

[7] The appellant asserts that she attached documents to support her allegations of score manipulation, including a purported submission to the MSPB dated March 19, 2021 (of which the MSPB has no record), but her filings do not say what she claims they say. For example, the appellant cites to a purported "Exhibit C 1-97," but the Exhibit C

further contends that the agency has not shown how they arrived at her score and "has not shown by a preponderance of the evidence that [M.O.] is the most qualified and should have been selected over all, to include the [a]ppellant." *Id.* at 9. Additionally, the appellant observes that "[t]he [a]gency [has] yet to show [M.O.'s] rating and competencies score, but continue[s] to say hers[] is higher than the [a]ppellant's without any proof." *Id.* at 11. She also disputes whether M.O. was, in fact, reassigned from the position at issue. *Id.* at 8. Finally, she contends that the agency violated her rights under the VEOA because "[a]ppellant Hobson at the time of the agency's selection for [the] stated case was [a] preference-eligible applicant and she was passed over for not one, but two non-preference applicants." CRF, Tab 12 at 5. The appellant requests sanctions for the agency's alleged noncompliance. CRF, Tab 11 at 13-14.

## ANALYSIS

¶16　　"The Board has jurisdiction to consider an appellant's claim of agency noncompliance with a Board order." *Phillips v. Department of the Navy*, 114 M.S.P.R. 19, ¶ 7 (2010). The Board's power to compel compliance with its orders "is broad and far-reaching and functions to ensure that . . . applicants for employment are returned to the status quo ante or the position that they would have been in had the unlawful agency action not occurred." *Id.* The agency bears the burden of proving compliance by a preponderance of the evidence. 5 C.F.R. § 1201.183(d).

¶17　　Under the VEOA, an appellant whose veterans' preference rights were violated is entitled to a selection process "consistent with law." *Weed v. Social*

---

attached to her response contains only 3 pages and appears to concern a third party's EEO complaint and alleged involuntary resignation. *See* CRF, Tab 11 at 8 *and* 83-86. The Board reviewed the appellant's exhibits attached to her submissions in this proceeding and found nothing therein to support her claims that the agency manipulates EAS's score assignments.

*Security Administration*, [110 M.S.P.R. 468](#), ¶ 6 (2009). Critically, the outcome of "a lawful selection process may benefit individuals other than the appellant," *id.* ¶ 12, because an appellant is generally not entitled to a position with the agency. *See Phillips*, [114 M.S.P.R. 19](#), ¶ 21; *Weed*, [110 M.S.P.R. 468](#), ¶ 6; *see also Scharein v. Department of the Army*, [91 M.S.P.R. 329](#), ¶ 10 (2002) ("The VEOA does not guarantee a preference eligible a position but only an opportunity to compete with the other candidates on the certificate of eligibles."). Accordingly, to establish compliance, "the agency must show that its reconstruction of the selection process" for the position at issue "was in accordance with applicable veterans' preference laws and that any subsequent appointment . . . was the result of fair and lawful consideration of the pool of candidates, including the appellant, under an appropriate reconstruction." *See Phillips*, [114 M.S.P.R. 19](#), ¶ 7.

¶18    A lawful reconstructed selection process requires the agency to begin by removing the improperly appointed selectee from the subject position during the reconstruction. *E.g.*, *Weed*, [110 M.S.P.R. 468](#), ¶ 13. Further, to the extent possible, the selecting official should be the same person as in the original hiring process and should base their decision on the "circumstances at the time of the original selections, including filling the same number of positions during the reconstructed process as [the agency] did in the original one." *Phillips*, [114 M.S.P.R. 19](#), ¶ 19.

¶19    Once the agency has recreated the vacancy, the "agency has the discretion to fill [the] vacant position by any authorized method." *Joseph v. Federal Trade Commission*, [103 M.S.P.R. 684](#), ¶ 11 (2006), *aff'd*, [505 F.3d 1380](#) (Fed. Cir. 2007). "Merit promotion procedures constitute an authorized method for evaluating and selecting from among internal candidates, and competitive examination is an authorized method for evaluating and selecting from among external candidates." *Id.* (internal citations omitted). An agency may consider both internal and external candidates for the same position simultaneously, and "this results in both external and internal competitions.'" *Id.* When an agency

accepts applications both from external and internal applicants, the agency must provide a preference eligible the right to compete under merit promotion principles as well. 5 U.S.C. § 3304(f)(1). Regarding merit promotion competition, we have observed:

> Requirements governing merit promotion competition . . . differ significantly from those applicable to open competitive examinations. The regulatory provisions governing merit promotion programs do not require selection from among the three top-ranked candidates; instead, they provide for selection of any of a group of 'best qualified' candidates . . . . These authorities also do not provide for the addition of preference points or for the other special preference-related procedures . . . [required for] open competitive examinations. In fact, regulations governing merit promotions seem to prohibit such preferences. Finally, the Board has held that employees are not entitled to veteran preference under merit promotion regulations.

*Brandt v. Department of the Air Force*, 103 M.S.P.R. 671, ¶ 16 (2006) (internal citations omitted).

¶20     We are satisfied that the agency has shown by preponderant evidence that its reconstructed selection process was in accordance with law. The agency has presented documentary evidence that it removed M.O. from the subject position by reassigning her to a different teaching position on August 1, 2021, CRF, Tab 10 at 23-24, thereby creating a vacancy in the subject position.[8] CRF, Tab 10 at 22. It then calculated the appellant's correct score and ranking on the external candidate list by adding 10 points representing the appellant's derived veterans' preference to her EAS-assigned score of 45. *See id.* at 16. The agency then

---

[8] Under our precedents, it was not necessary for the agency to remove M.O. from Federal service altogether to conduct a bona fide reconstruction; rather, it was sufficient to reassign her to another position within the agency. *See, e.g.*, *Weed*, 110 M.S.P.R. 468, ¶ 13 ("[T]he agency need not remove the individual from the federal service, but need only remove the individual from the position he or she holds as the result of the improper appointment.").

elected not to hire from the external list at all and instead decided to select an applicant from the internal list, *see id.* at 17, which was lawful. *See, e.g.*, *Joseph*, 505 F.3d at 1384 (affirming the Board's conclusion that the agency did not violate VEOA where it gave the appellant 10-point veterans' preference but selected the internal candidate because "no statute or regulatory provision . . . required the [agency], once it undertook to inaugurate the selection process by following the alternative procedure, to limit itself to the competitive examination process in making its final selection").

¶21        Thereafter, the same selecting official as in the original hiring process considered the applications of the candidates on the certificate of best qualified candidates, including the appellant's, and selected M.O. based on her interview and her experiences as reflected on her resume. CRF, Tab 10 at 27. Although the reconstructed process did not alter the outcome, we find that the agency has shown that it gave the appellant a bona fide opportunity to compete for the subject position, which is what the VEOA requires. *See, e.g.*, *Dean v. Consumer Product Safety Commission*, 108 M.S.P.R. 137, ¶ 11 (2008) (finding no violation of the applicant's preference rights where he was placed on the referral list for competitive and merit promotion announcements, although he was not selected to interview); *Brandt*, 103 M.S.P.R. 671, ¶ 23 (same).

¶22        The appellant's challenges to the agency's evidence of compliance are unavailing. Contrary to the appellant's assertions, the agency has shown how it arrived at her pre-veterans' preference score of 45: the EAS algorithm assigned it based on her answers to application questions. The appellant has not presented any evidence that would tend to show that the agency manipulated the EAS algorithm to depress her score or to elevate others' scores. While the appellant is correct that the selecting official referred to M.O. as having "high scores," *see* CRF, Tab 10 at 27, despite there being no evidence in the record regarding those scores, the referral list and the Supervisory HR Specialist's sworn declaration

both confirm that M.O. did not, in fact, receive a score because she was an internal candidate appointed under merit promotion procedures.

¶23    Although the appellant contends that the agency has not proven that M.O.is "the most qualified" applicant, *see* CRF, Tab 11 at 9, the agency was not required to prove that; rather, her selection was in accordance with law so long as she was "among a group of best qualified candidates," *see* 5 C.F.R. § 335.103(b)(4), which she was by virtue of being on the referral list of qualified candidates along with the appellant and the other 50 applicants.  *See* CRF, Tab 10 at 15-17. Finally, the appellant's contention that she was "passed over" for M.O., who is not preference eligible, is inapposite because veterans' preference rules such as the prohibition on passing over a preference eligible without dispensation from the Office of Personnel Management, *see* 5 U.S.C. § 3318(c)(1), do not apply to merit promotions.  *See Sherwood v. Department of Veterans Affairs*, 88 M.S.P.R. 208, ¶ 10 (2001) ("The statutes that may have given the appellant an advantage in a competitive examination were not violated because those statutes did not apply to the selection at issue.").

¶24    For the reasons stated above, we find the agency in compliance and dismiss the petition for enforcement.  This is the final decision of the Merit Systems Protection Board in this compliance proceeding.  Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 229 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under <u>5 U.S.C. § 2302</u>(b)(8) or other protected activities listed in <u>5 U.S.C. § 2302</u>(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals

review within **60 days** of the date of issuance of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                           /s/ for
                                     Jennifer Everling
                                     Acting Clerk of the Board

Washington, D.C.